You take the matter under advisement and call the next case United States vs. Green 08-2330 Mr. Greenberg and Mr. Sanders. Good afternoon. My name is Mark Greenberg. I am counsel for the appellant David Green and with the court's permission I would like to reserve three minutes for rebuttal. That's fine. Thank you sir. Your Honor, the government indicted David Green on the charge of attempted to possess. Yeah, we're familiar with the facts. The first issue on the court, the government cited bringing in the evidence with respect to wanting to get the dynamite, wanting to kill someone in connection and this is all in connection with a drug trial. By citing the Seventh Circuit's intrinsic evidence standard. But haven't we really declined to go so broadly? As the government acknowledged to Judge Kugler, this court has not yet adopted the intrinsic evidence standard. But Judge Kugler, the district court accepted, I think it was United States vs. Gibson, the Seventh Circuit case that laid out the intrinsic evidence standard in his evaluation of the government's presentation and in his ruling on the admissibility of the evidence. Even assuming the intrinsic evidence standard applies in this circuit, the evidence regarding the killing of the undercover agent was not inextricably linked to the evidence that was presented with regard to the drug attempted purchase. Let me go back to square one, if I might, Mr. Greenberg. As Judge Ambrose indicated at the outset, this question came to the attention of the district court. And it came to the attention of the district court through the government's in limine motion. Seeking a ruling pretrial to admit what it characterized as intrinsic evidence. And again, as Judge Ambrose's suggestion has indicated, not only have we not adopted the Seventh Circuit test, to the best of my knowledge, we've not explicitly acknowledged or adopted that there really is such a creature as intrinsic evidence. And I've grappled with this question for a lot of years because I spent so many years as a trial judge confronting occasions when the government, and it was virtually always the government, wanting to admit intrinsic evidence in various ways. I've never been entirely sure why in many cases they've sought to avoid 404B where they might just as easily have evidence admitted. But in any event, I'm trying to figure out how you prevail. We seem to have three directions we can go. The government, for whatever reason, sought at the outset to have this admitted as intrinsic evidence. It did not pursue the 404B route, but we can, as they remind us in their brief, affirm on any reason. So we also have the 404B avenue available to us. And finally, and eventually, we have harmless error. In reviewing transcripts, in reviewing the conversations that come through on tape, and tape, we all know, is powerful evidence. I was a prosecutor before I was a trial judge. Everybody wants to use tape. There was only a drug charge here. There was not the charge that would have resulted from the attempt to purchase dynamite. How do you travel all three of those routes and eventually keep this evidence out? It's important to remember that in my brief and on my argument to this court, I was arguing for the exclusion of the threat to kill the agent. I understand. At the district court level, there was a broader request to keep out all references to the dynamite. That's been refined on appeal, right? Yes, absolutely right. So the question then becomes is, is the evidence regarding the Green's desire to kill the undercover agent, does that fall within the extrinsic evidence rule if one does apply in this circuit? Number two, as the court points out, does it constitute 404B evidence? And number three, if it does, is the prejudice substantially outweighed, is the probative value of that evidence substantially outweighed by the prejudice under 403, and then is it a harmless error? So why doesn't the government get it in under 404B? Let's assume no such thing as intrinsic evidence exists. Why does the government not get it in under 404B? Because evidence that Green wanted to kill an agent is totally irrelevant. How is it irrelevant? Who's the snitch here and why did she go to the agents in the first place? But that's a different thing. That's a motivation of the snitch. That's not 404B. Her credibility is at issue. Why does that not implicate 404B? The 404B analysis pertains to Let's just run through them. You got the first thing. You're arguing it wasn't a proper purpose and it's got to be relevant and the probative value must outweigh the prejudicial effect and it must have a curative instruction. Here, doesn't the murder threat put into context the references that Dynamite made on the tapes? It explains why Stahl approached the authorities because she was concerned that this was really getting way beyond anything she'd ever dealt with before. And it would appear that that's a proper purpose under 404B. Well, I think that if in fact it's a proper purpose under 404B, then the next step to go to would be to go to the 403 analysis. And whether or not that proper purpose under 404B is substantially outweighed by the prejudice. Well, that certainly is true as a matter of course, but I'm not there yet. And I'm also not understanding your position with respect to 404B. I understand context as being more related to intrinsic evidence if there is such an animal known as intrinsic evidence. But let's focus on 404B. Just a moment. Credibility, we all know, is always wrong, right? Yes. And the government's prime witness here, the snitch, Ms. Stahl, right? Yes. Very important witness. She claims that she went to the FBI because the threat was made. I think she indicated she has brothers who are state police officers or words to that effect. She was concerned. That was her motive for going to the FBI, she said. But your side took issue with that, didn't you? You sought to attack her credibility by suggesting she did it for the money. Well, she did. The fact of the matter is the fact that she did. She may have, but that makes it a debatable issue. puts her motive at issue and becomes an entirely proper purpose textually within 404B. My 404B analysis in my brief dealt with whether or not Green's desire to kill the agent was admissible with respect to Green's motive or opportunity to commit the crime of attempted to possess and attempted to deliver 500 grams or more of cocaine. That was the argument that I made. And I believe in the context of the 404B argument, the government kept saying that the threat to kill the agent was relevant with respect to Green's motive or opportunity to commit the crime charged. In its brief to this court, the government argued that, based upon my opening statement to the jury, that that placed Stahl's motive at issue. It did, didn't it? Isn't that exactly what you wanted to do? Well, Stahl's motive with respect to her testimony. Are you telling me that from the get-go, opening statement, you were not putting Stahl's motive at issue? Of course I was. For credibility purposes? Of course you were. Now, why doesn't that fit explicitly, textually within 404B? There's nothing in 404B that says it's narrowed, it's limited to the defendant's motive. There's nothing in there to that effect. Well, I guess you're right. Motive evidence is explicitly, textually relevant under 404B? Well, I think that the 404B was that the evidence can't be admissible to show the defendant's propensity to commit the crime charged. So, therefore, the next sentence pertaining to the exceptions to 404B pertained to some other reason that might be relevant with respect to the defendant, not necessarily with respect to the witness. I think the court, I mean, it's fair to say that Stahl's motive, to some degree, it was relevant. I will concede that. But I don't think 404B is the analysis here. I thought 404B was the analysis with respect to Greene's motive, Greene's opportunity, Greene's preparation. Well, it may have been, as far as you were concerned, at least until this argument. We may affirm for any proper reason. And you have not yet provided me with any argument as to why your attack on Stahl's motive, so as to take on her credibility, does not fit neatly within 404B. And it's obvious I'm not going to win on the 404B argument, so let me now segue to the 403 argument. Even though it might be proper under 404B, if that evidence is substantially outweighed by its prejudice, this court can then exclude it or the district court can exclude it under 403. My view is that, no pun intended, Greene's desire to kill an agent was so explosive that that particular evidence substantially outweighed whatever probative value it was that Stahl had to go to the outset to the FBI. The fact of the matter is that this, factually in our case. There's some substantial overlap really between the 403 analysis and the harmless error analysis. Let me touch then on the harmless error if I can. I wasn't trying to cut you short by any means. I'm just saying our inquiry has some parallels, some overlap. Don't worry. You're on our time, so don't worry about the red light. Let me just touch on the harmless error. Well, the court downloaded my position with respect to the 403. On three occasions, the government elicited from Stahl that Greene wanted to kill the agent, to blow him up on three occasions. If, in fact, her motivation was appropriate, under 403, one time would have been sufficient. There was no reason to do it three times. But although the tape did contain some evidence that he really didn't want to kill the agent because the person was just doing his job. You're absolutely right. Absolutely right. So at the end of the day, the tape, the conversation that was recorded, Greene did devalue the device to the agent. So you got some favorable evidence. Yeah. I understand it's favorable evidence, but the point I'm trying to make is that the unfavorable evidence should have been brought out one time rather than three, under 403. Now, with respect to the harmless error, I am not going to stand up here and deny the fact that Greene talks left and right about buying cocaine. All right? But at the end of the day, when the man goes to the car and the company of the undercover FBI agent, the FBI agent, in his own words, undercover agent Campana, said on the tape and acknowledged under cross-examination that Greene was uninterested in buying the dynamite and very well might have been uninterested in buying the cocaine. And that came out of trial, too. Did it not? It did, indeed. But that then goes to the harmless error, going to Judge Smith's point about how we win the case, because there is no harmless error here. If, in point of fact, you conclude that the thrice illicit testimony from Stahl that Greene wanted to kill the agent is prejudicial under 403, then by virtue of the fact that the agent tells you on the tape and on cross-examination that Greene was uninterested in culminating the transaction, there's no harmless error. So therefore, you have to reverse. That's how I get there. Thank you. We'll get you back on rebuttal, and also we'll deal with the enhancement issue at that point as well. Mr. Sanders. Good afternoon. May it please the Court, I'm Stephen G. Sanders. I'm half of the government, the appellee in this case. Just to pick up where Judge Smith left off or where we began, I guess, at the outset, why is it that you want to have a motion in limine that talks about the intrinsic evidence route when you have something that's much, much easier by going the 404B route? That's a good question. I think the answer is, honestly, we gooped in this case. We should have moved in the alternative. And it's just a situation where I think the trial assistant believed that this was so clearly intrinsic, albeit under other circuits' law, knowing that there's a good law. That's what causes my mind to boggle. I go back to my days trying cases as a district judge, and I don't know how many times I would hear relevancy objections from the defense. This is not an in limine context I'm talking about. During trial, evidence is being presented, and the prosecutor is asked a question. It brings about a defense objection, and the government lawyer says, well, it's background evidence, Your Honor. Okay? Please point me to where in the FREs there is such a thing, at least in the rules themselves, as background evidence. It has to be relevant to something. That's a threshold, that's a predicate to anything that comes in. So tell me what it's relevant to. We're in the same situation here. There's no rule, there's no textual source for intrinsic evidence, is there? So why would the prosecution opt first for something that doesn't have any explicit support in the FREs over something that does, like 404B? Well, I have to go back to this Circus case law to answer that question, because at the time this motion was made, we did have Gibbs. We had Cross on the books, which doesn't I know, which is not. Don't include me as a fan of intrinsic evidence. Exactly. No, and I fully accept that. But so, and it's not, look, we moved other, there are other pieces of evidence that were at issue in the in limine motion, which we did move on to the grounds. Right, right. Mr. Sanders, Mr. Sanders, this is Judge Alderson. It seems to me that a good lawyer like you, having heard the observations of my colleagues, when you say that let's assume that we were wrong on intrinsic evidence, but this court on review can affirm on the basis of any other reason, and that this, although it was, 404B was not alive there, it's certainly alive in this court. And so why don't you just simply say this court can decide this case for reasons other than by the reasoning of the district court? I will gladly move to that, because this issue is really one of relevance. Is it relevant to the case, and is it relevant to a non-propensity purpose? And our brief identifies at least three or four reasons why that is so. Your Honor spent some time talking about credibility. It wasn't just put in issue, by the way, in the opening statement. In opposition to our in limine motion, the defendant was already attacking the credibility of the informant. So even before the judge ---- Well, and that's important. I mean, it's important that you bring out it was raised then. It's important that it be brought out it was raised in the opening statement, because the defense put it at issue. You were not producing this evidence before credibility was ever put at issue. That's correct. Which could have raised, which could have created an issue for you. I believe that's true, because I don't think, and I think that Mr. Green's counsel was candid in saying his main defense here was to attack the credibility of this informant. And so once that attack was lodged, an attack on her bias and her motive, not only did this rebut that attack, but because there was discussion of that very thing on the tapes, it corroborated her story and therefore rehabilitated her credibility in front of the jury. Let me move quickly to the 403. Well, the agents really wanted that dynamite, didn't they? I have to tell you, you know, it got some of my ---- it got me chuckling a little bit and brought back some recollections of some specific situations. When I saw how frequently Ms. Stahl, obviously with coaching, was going back in and trying to resurrect the dynamite conversation. Notwithstanding Mr. Green's, at some point, absolute noninterest in the subject. Well, and let me say a word about that. You almost wonder if he suspected he was being played. I think he did. There's a lot of that in this record, which explains why he's acting the way he does on the day of this aborted buy. But let me go back to the statements about that he disavowed any interest in the dynamite. I think that bit of testimony or that bit of tape that the defendant was talking about where he says, oh, Gussie is just doing his job. In there, Green says, I'm not after the undercover. I want the rat. So I think there's two people at issue, and it's sort of turned. It wasn't the undercover he was talking about. It was another informant who had set him up for the arrest, and Gussie was the one who did the arrest. But he's clearly still talking about wanting the dynamite for some reason. And, again, context matters. So this, in addition to reinforcing and repelling the attack on Ms. Stahl's credibility, it certainly put in context why there were mentions of this all over the tape. So that gives it substantial probative value when we get to the 403 balancing. Now, the argument that was made today about mentioning it three times was never advanced below. That's accumulated in this argument under 403. And that was not, as at least my review of the record here shows, that was not the argument that was made. The argument was made that this is simply too unfairly prejudicial to allow its admission, even in the face of a strict limiting instruction. And Judge Kugler recognized the potential danger for unfair prejudice. How many times were curative instructions given at the time the evidence went in and then finally in the final charge? No, Your Honor. There was one instruction given, and it was in the course of the final charge. All right. Now, on that issue, the judge's order, I think both in his oral remarks on the record and his order I think said that the limiting instruction would be given at the time and at the end upon request. And then so in the final charge, the curative instruction was included to his font date, and the defendant expressed no objection to it and, in fact, specifically approved it. Now, on the 403 analysis, I mean, Judge Kugler said, of course, it's prejudicial for your client to have this, but that's a limiting instruction before. But 403 doesn't talk about prejudice. It talks about unfair prejudice. Right. And I think Judge Kugler recognized the danger for unfair prejudice. When he said that, he meant I don't think it's prejudicial just because it helps the government and hurts the defendant. I think he recognized that there was a danger because this could be considered inflammatory evidence, but he also understood it's necessary for the jury to understand the context of this case, to know why we got into this deal where we're talking about dynamite and cocaine at the same time and why the agent comes with a bag of dynamite and a bag of cocaine in the trunk of the car. So the district judge said a limiting instruction will cure or mitigate that danger of unfair prejudice, and as this Court knows, the standard review for that kind of determination is extraordinarily deferential. Why don't you, unless there's any further questions, let's go to the sentencing enhancement for obstruction of justice. Sure. It looks as if, I mean, they're leaving the parking lot. Mr. Green is, you know, he is panicked because he's sure that there are police officers all over the place. And, you know, he's, look how many are in there. I want to go through all the colorful language. There's the effing man. Don't you ever bitch. I ought to kill your effing ass. And then a couple miles down the road, he just gets out of the car and leaves her alone. I mean, where do you get to that? You know, I can see the context where it might be a threat because he was wanting dynamite, et cetera. But in this particular case, you know within a matter of literally, literally minutes that he wasn't doing anything to her. How do you get that he was obstructing justice here? And the answer to that question is in note four, the application note, which says that the covered conduct includes threatening, intimidating, or otherwise unlawfully imposing witness directly or indirectly or attempting to do so. So at the very least, this is an indirect effort to intimidate her. And context does matter, just like with the 404B issue. And this is just her testimony, right? She didn't have a wire on her in the car, did she? Or did she? I believe she did. She did. So did he listen to the actual tape itself? That's correct. And, in fact, Judge Kugler, in resolving this factual dispute at sentencing, said context matters. And immediately after he makes that threat, she says, what do you want to kill me for? He says, why are you trying to set me up for? So when you have that bit of testimony or evidence, and you couple it with the evidence that came in at trial that he was attempting to purchase dynamite because he wanted to retaliate against the last person who set him up. Either way. You have, I think, under the preponderance, burden of persuasion, and then the clear error standard review that this Court applied, you have, I think, a fairly easy case for intimidating, if not threatening. And that's sufficient under the application note to satisfy this guideline. Okay. Any further questions? Judge Alderson, any further questions? No, sir. Okay. Thank you very much, Mr. Sandberg. Your Honors, I feel as though. . . Can we begin with just the last one first, just to bat it out of the air, the enhancement point? Sure. In this case, in light of all that had happened, Ms. Stahl did feel threatened. She conveyed that, and the Court, having listened to the tape, bought into it. It may seem attenuated on its face, but when you add the context, it appears that you had a witness here that really was fearful that something could happen to her. Judge, Green is driving the car. Stahl is the passenger in the car. They drive for a period of time. Green is venting. He's profane. He's sane, as the Court talked about, the words about that could be construed as an indirect threat. But at the end of the day, he stops the car, gets out, and lets her drive away, and contemporaneously to that says, I don't want to see you as far as east is to west. I don't want to see you anymore. Well, but this isn't about completing the threat. If it were, we might be here on a completely different charge. But it's a question of disavowing the threat. The threat has to stand on its own. Your Honor, he disavowed the threat. He did? Sure. He tells her, I don't want to see you anymore as far as east is to west. It could mean that he would like to eliminate her so he doesn't see her anymore. That's the way she took it. Well, I think that as the Court points out, context is everything, and I think that the context here is actions speak louder than words. Green got out of the car and let her voluntarily drive away and says, goodbye, I don't want to see you anymore as east is to west. That's with respect to the enhancement. But you know what? With respect to the 404B situation here, I feel like Mr. Green has been lured into a trap. The government files a motion in limine before Judge Kugler and lays out its reasons why it wants to introduce this evidence. And as Green's attorney, we then respond in kind and then have to take that game plan, have to take those rules of the game that Judge Kugler lays out and deal with it on opening statement. It is true that, as Mr. Sanders said, they goofed up by not arguing 404B. One could argue they should have argued 404B in the primary as opposed to the alternative. But we also can affirm for any reason other than intrinsic evidence, and it's pretty hard to get around 404B. Okay. Then I revert back to 403 about the motive and whether or not you could have eliminated those verbal statements that Green supposedly made and then multiply them by three by the number of times the government elicited them from Stahl. But it looked as if what you did at trial was pretty as good as you could have done to diminish the prejudice. You had the tape played where he said, look, I don't want to kill the person who's doing his job. He went after Stahl's credibility front and center, which was, from my limited perspective, seems like the right way to go. And the jury just chose not to believe it. That's all. And there was a curative instruction. Don't take anything into account with respect to the dynamite at all. This is a drug case. But, Judge, the point is that if, in point of fact, that a 403 violation can be cured by the lawyer trying to minimize its impact of prejudice, I don't think that that's going to set a good precedent for allowing that kind of evidence to come in the future. Thank you, sir. Thank you very much. Thank you to both counsel for well-presented arguments. We'll take the matter under advisement and call the last case of the day.